```
          IN THE UNITED STATES DISTRICT COURT
           FOR THE NORTHERN DISTRICT OF TEXAS
                    DALLAS DIVISION
```

YUDEXYS PENALVER,                §
                                 §
              Plaintiff,          §
                                 § Civil Action No. 3:10-CV-0280-D
VS.                              §
                                 §
RESOURCE CORPORATION OF          §
AMERICA,                         §
                                 §
              Defendant.         §

MEMORANDUM OPINION
AND ORDER

In this action under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, alleging claims of national origin-based discrimination and retaliation, defendant's motion for summary judgment presents the question whether a reasonable jury could find in favor of the plaintiff on either claim. For the reasons that follow, the court grants the motion as to her discrimination claim and denies it as to her retaliation claim.

I

Plaintiff Yudexys Penalver ("Penalver"), a bilingual Hispanic of Cuban origin, sues her former employer, Resource Corporation of America and Recovery of Texas, LLC ("RCA"), to recover under Title VII. RCA hired Penalver as a Bilingual Patient Support Representative in 2005. Penalver was hired by Sandy Pennington ("Pennington"), and her job duties included assisting hospital patients with processing Medicaid claims. Pennington and Theresa

Howard ("Howard") supervised Penalver's work.[1]

On July 26, 2006 Pennington and Howard met with Penalver and told her not to speak Spanish in the workplace unless she was assisting a patient who spoke only Spanish. On July 28, 2006 Penalver requested a copy of her employee file and a copy of the minutes of the July 26, 2006 meeting with Pennington and Howard. Later that day, Pennington terminated Penalver without cause.

Penalver alleges that RCA intentionally discriminated against her by discharging her based on her national origin or by retaliating against her for complaining of national original discrimination. RCA moves for summary judgment as to both of Penalver's claims.

II

Because RCA is moving for summary judgment on claims as to which Penalver will bear the burden of proof at trial, it can obtain summary judgment by pointing the court to the absence of evidence on any essential element of Penalver's claims. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once it does so, Penalver must go beyond her pleadings and designate specific facts demonstrating that there is a genuine issue for trial. *See*

---

[1]The court recounts the evidence in a light favorable to Penalver as the summary judgment nonmovant and draws all reasonable inferences in her favor. *See, e.g., Owens v. Mercedes-Benz USA, LLC,* 541 F.Supp.2d 869, 870 n.1 (N.D. Tex. 2008) (Fitzwater, C.J.) (citing *U.S. Bank Nat'l Ass'n v. Safeguard Ins. Co.,* 422 F.Supp.2d 698, 701 n.2 (N.D. Tex. 2006) (Fitzwater, J.)).

*id.* at 324; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam). An issue is genuine if the evidence is such that a reasonable jury could return a verdict for Penalver. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Penalver's failure to produce proof as to any essential element renders all other facts immaterial. *Trugreen Landcare, L.L.C. v. Scott*, 512 F.Supp.2d 613, 623 (N.D. Tex. 2007) (Fitzwater, J.). Summary judgment for RCA is mandatory if Penalver fails to meet this burden. *Little*, 37 F.3d at 1076.

III

The court first addresses Penalver's discrimination claim.

A

Under Title VII, it is an "unlawful employment practice for an employer . . . to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin[.]" 42 U.S.C. § 2000e-2(a)(1). To prevail on her discrimination claim, Penalver must present direct or circumstantial evidence that her national origin was a motivating factor for RCA's adverse employment action. *See, e.g., Siddiqui v. AutoZone West, Inc.*, 731 F.Supp.2d 639, 648 (N.D. Tex. 2010) (Fitzwater, C.J.) (addressing Title VII claims for rase-based harassment, discrimination based on race, ethnicity, national

origin, and religion, and retaliation) (citing *Roberson v. Alltel Info. Servs.*, 373 F.3d 647, 652 (5th Cir. 2004)). "'Direct evidence is evidence that, if believed, proves the fact of discriminatory animus without inference or presumption.'" *West v. Nabors Drilling USA, Inc.*, 330 F.3d 379, 384 n.3 (5th Cir. 2003) (Fitzwater, J.) (age discrimination case) (quoting *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 897 (5th Cir. 2002)). "If an inference is required for the evidence to be probative as to [a defendant's] discriminatory animus in firing [plaintiff], the evidence is circumstantial, not direct." *Sandstad*, 309 F.3d at 897-98. Penalver does not specifically reference any direct evidence of discrimination in her motion or in her amended complaint.[2] The court holds that she is relying on circumstantial evidence to prove intentional discrimination.

B

Because Penalver is relying on circumstantial evidence, she must establish discrimination using the "modified *McDonnell Douglas* approach[.]" *Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004) (age discrimination case). As modified, *McDonnell Douglas* consists of three stages. First, Penalver must establish a prima facie case of discrimination, which "creates a presumption

---

[2]In fact, in her response, Penalver does not directly respond to RCA's motion as it pertains to Penalver's discrimination claim. Penalver responds directly only to RCA's motion for summary judgment as to her retaliation claim.

- 4 -

that [RCA] unlawfully discriminated against [her]." *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981). Second, the burden shifts to RCA to articulate a legitimate, nondiscriminatory reason for the employment action taken against Penalver. *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506-07 (1993). RCA's burden is one of production, not proof, and involves no credibility assessments. *See, e.g., West,* 330 F.3d at 385. Third, if RCA meets its production burden, Penalver may prove intentional discrimination by proceeding under one of two alternatives: the pretext alternative or the mixed-motives alternative. *See Rachid*, 376 F.3d at 312. Under the pretext alternative, Penalver must "offer sufficient evidence to create a genuine issue of material fact . . . that [RCA's] reason is not true, but is instead a pretext for discrimination[.]" *Id.* (internal quotation marks and citation omitted). Under the mixed-motives alternative, Penalver must offer sufficient evidence to create a genuine issue of material fact "that [RCA's] reason, while true, is only one of the reasons for its conduct, and another motivating factor is [Penalver's] protected characteristic[.]" *Id.* (internal quotation marks and citation omitted).

C

1

To establish a prima facie case of discrimination, Penalver may show that (1) she was within the protected class; (2) she was

qualified for her position; (3) she was discharged; and (4) she was replaced by someone outside the protected class, or, in the case of disparate treatment, other similarly situated employees were treated more favorably. *See Curry v. Telect, Inc.*, 2009 WL 1659344, at *4 (N.D. Tex. June 15, 2009) (Fitzwater, C.J.) (citing *Bryan v. McKinsey & Co.*, 375 F.3d 358, 360 (5th Cir. 2004) (addressing discharged-based § 1981 claims)). RCA appears to concede the first three elements. It maintains, however, that Penalver cannot produce any evidence that she was replaced by someone outside of the protected class, or that other similarly-situated employees were treated more favorably. RCA alleges that Penalver was replaced by Salvadora Estrada ("Estrada"), who is Hispanic, and that no similarly-situated employees were treated more favorably than Penalver.

Penalver appears to concede that she is a Hispanic and that she was replaced by a Hispanic, and to aver instead that she is of Cuban origin, and that she was replaced by someone who is not of Cuban origin. The court holds that Penalver has met her burden of establishing a prima facie case on this basis.

2

Penalver has also established a prima facie case of discrimination based on RCA's alleged English-only policy.[3] The

---

[3]It is not clear whether Penalver alleges two distinct bases for discrimination——her Cuban national origin and her speaking Spanish in the workplace. Because the court is granting summary

"prima facie case [requirement] is not inflexible, and the specific facts required to be proved may vary depending on the factual situation[.]" *Inclusive Cmtys. Project, Inc. v. Tex. Dep't of Hous. & Cmty. Affairs*, 749 F.Supp.2d 486, 501 (N.D. Tex. 2010) (Fitzwater, C.J.) (race discrimination in housing case). "'It is relatively easy . . . for a plaintiff to establish a *prima facie* case.'" *Id.* (quoting *Arbor Bend Villas Hous., L.P. v. Tarrant Cnty. Hous. Fin. Corp.*, 2005 WL 548104, at *7 (N.D. Tex. Mar. 9, 2005) (Means, J.)). "The primary language of an individual is often an essential national origin characteristic." 29 C.F.R. § 1606.7(a) (2011). The Equal Employment Opportunity Commission ("EEOC") presumes under its regulations that a rule requiring employees to speak English at all times in the workplace violates Title VII. *See id.* "Courts have found a nexus between language requirements and national origin discrimination." *Colindres v. Quietflex Mfg.*, 2004 WL 3690215, at *12 (S.D. Tex. Mar. 23, 2004) (citing *Espinoza v. Farah Mfg. Co.*, 414 U.S. 86, 92-93 n.5 (1973)).

Penalver has adduced some evidence of the following: (1) the English-only policy was instituted in response to Penalver's behavior (and was targeted at her); (2) the policy was instituted at a meeting attended only by Penalver and her supervisors; (3) other employees did not know about the policy; (4) the policy was

---

judgment dismissing her discrimination claim, it will assume that she is asserting both grounds in support of this claim.

in place only two days before Penalver was terminated; and (5) the written policy did *not* allow for Spanish-speaking during personal time and required that "office conversations, general chitchat, etc, should be done in English." D. App. 41.

D

Because Penalver has established a prima facie case of discrimination, the burden shifts to RCA to articulate a legitimate, nondiscriminatory reason for the employment action taken against Penalver. *See St. Mary's Honor Ctr.*, 509 U.S. at 506-07. RCA's burden is one of production, not proof, and involves no credibility assessments. *See, e.g., West,* 330 F.3d at 385.

RCA has produced evidence of legitimate, nondiscriminatory reasons for terminating Penalver. According to this evidence, Penalver had a long history of failing to follow company policy, was absent from work without excuse, was insubordinate, was late for work, and had a poor attitude. RCA has introduced the testimony of Suzana Limones ("Limones"), RCA's Director of Operations. According to Limones, Pennington, Penalver's direct supervisor, consulted with Limones about Penalver's behavior and performance issues. Penalver once took a leave of absence without following proper company procedure and without prior clearance, and Penalver offered no explanation for her absence. Limones personally observed Penalver's unsatisfactory performance, Penalver was insubordinate or defiant regarding assignments, and Penalver

was transferred to a different location but did not improve her work performance.  Penalver did not get along with office peers, and she made insulting, belittling, crude, and derogatory comments in Spanish regarding non-Spanish-speaking coworkers.  According to Limones, the "grounds of termination were due to [Penalver's] past behavioral history of problems as mentioned in this declaration and insubordination."  D. App. 49.

RCA has also introduced the declaration of Frank Dominguez ("Dominguez"), the chief operating officer of RCA.  According to Dominguez, Penalver had a history of behavioral and performance problems, and she took a leave of absence from RCA without following procedure and without clearance from her supervisor.  Penalver did not meet performance goals or attendance requirements, and she was insubordinate to her supervisor.  Dominguez was informed that Penalver made insulting and belittling remarks in Spanish in the workplace about non-Spanish-speaking coworkers.  Several employees brought Penalver's negative comments about coworkers to management's attention.  According to Dominguez, the "grounds for termination were her past history of behavioral and attitude problems . . . and insubordination," and Penalver's request for a copy of her employee file in an insubordinate manner.  D. App. 52.

The reasons on which RCA relies for discharging Penalver are legitimate, nondiscriminatory reasons—i.e., that Penalver was

late, insubordinate, did not meet performance expectations, had a poor attitude, and did not work well with her coworkers.

E

1

Because RCA has met its burden of production, Penalver must defeat summary judgment by satisfying at least one of two alternative burdens: the pretext alternative or the mixed-motives alternative. *See Rachid*, 376 F.3d at 312. Under the pretext alternative, Penalver must "offer sufficient evidence to create a genuine issue of material fact . . . that [RCA's] reason is not true, but is instead a pretext for discrimination[.]" *Id.* (internal quotation marks and citation omitted). Under the mixed-motives alternative, Penalver must offer sufficient evidence to create a genuine issue of material fact "that [RCA's] reason, while true, is only one of the reasons for its conduct, and another motivating factor is [Penalver's] protected characteristic[.]" *Id.* (internal quotation marks and citation omitted).

It is unclear from the record under which alternative Penalver is attempting to proceed. Penalver points to a July 28, 2006 email that she wrote to Pennington and Howard, in which Penalver stated:

> [p]er our meeting on Wednesday 07/26/2006 @4:15pm I was informed that I was not to speak spanish [sic] in the office unless dealing directly with patients. When I was hired on, the position was Bilingual Patient Support Rep. I need copies of my complete file including what was discussed in our meeting on 07/26/2006@4:15 with [Pennington, Howard, and

>       Penalver] in the conference room at Harris
>       Hospital.  Thank you, [Penalver].

P. App. 12.  Later that day, Penalver was terminated.  Penalver also cites an email from Pennington to Dominguez in which Pennington notified Dominguez that "I basically told [Penalver] that after her e-mail today and speaking with Corporate that the decision was made for this to be her last day of employment with RCA."  *Id.* at 14.  Pennington also stated: "[b]eware, this usually means that [Penalver] will come back wanting more information . . . .  So, one more bad apple has fallen from the tree."  *Id.*  But Penalver testified at her deposition that she never had any discussions with her supervisors about tardiness or absences.  *Id.* at 5.

2

RCA maintains that the same actor inference allows the court to infer that RCA's proffered reason for Penalver's termination is not pretextual.  RCA relies on evidence that the same actor (Pennington) hired and fired Penalver.  When "the same actor hires and fires an employee, an inference that discrimination was not the employer's motive in terminating the employee is created."  *Faruki v. Parsons S.I.P., Inc.*, 123 F.3d 315, 320-21 n.3 (5th Cir. 1997) (citing *Brown v. CSC Logic, Inc.*, 82 F.3d 651, 658 (5th Cir. 1996)).  "The inference is not unassailable, however, and a plaintiff may overcome it by presenting evidence of 'sufficiently egregious' facts."  *Curry*, 2009 WL 1659344, at *4 (quoting *Brown*,

82 F.3d at 658). Accordingly, the question is whether Penalver has proffered evidence of sufficiently egregious facts to overcome the same actor inference and enable a reasonable jury to find that RCA's articulated reasons for discharging her are pretextual.

Penalver has not presented such evidence. For example, Penalver cites the email from Pennington to Dominguez that gave two reasons for terminating Penalver: (1) Penalver sent an email to Pennington requesting her file, and (2) the RCA corporate office had decided to terminate her employment. These are not "egregious facts" that indicate that RCA discriminated against Penalver on the basis of her national origin.

The court therefore holds that RCA is entitled to summary judgment dismissing Penalver's Title VII discrimination claim.

IV

RCA also moves for summary judgment as to Penalver's retaliation claim. Penalver maintains that RCA retaliated against her by terminating her employment after she requested copies of her employee file and the minutes of her meeting with Pennington and Howard.

A

Title VII's anti-retaliation provision prohibits employers from "discriminat[ing] against" an employee "because he has opposed any practice made an unlawful employment practice" by Title VII or "because he has made a charge, testified, assisted, or participated

in any manner in an investigation, proceeding, or hearing" under Title VII. 42 U.S.C. § 2000e-3(a). Penalver offers no direct evidence of retaliation, so she must proceed under the *McDonnell Douglas* burden shifting paradigm. She must demonstrate a prima facie case for retaliation by showing that (1) she engaged in a protected activity; (2) an adverse employment action occurred; and (3) a causal link existed between the protected activity and the adverse employment action. *See, e.g., Walker v. Norris Cylinder Co.,* 2005 WL 2278080, at *9 (N.D. Tex. Sept. 19, 2005) (Fitzwater, J.) (citing *Long v. Eastfield Coll.*, 88 F.3d 300, 304 (5th Cir. 1996)). As to the third element, the initial requirement that Penalver show a "causal link" between a protected activity and an adverse employment action is "much less stringent" than the "but for" causation that a jury must find. *Montemayor v. City of San Antonio*, 276 F.3d 687, 692 (5th Cir. 2001); *see also Khanna v. Park Place Motorcars of Hous., Ltd.*, 2000 WL 1801850, at *4 (N.D. Tex. Dec. 6, 2000) (Fitzwater, J.) (characterizing prima facie burden as "minimal").

If Penalver establishes a prima facie case, the burden shifts to RCA to articulate a legitimate, nondiscriminatory reason for the alleged retaliatory action taken. This burden is one of production, not of proof. *See Wooten v. Fed. Express Corp.*, 2007 WL 63609, at *16 (N.D. Tex. Jan. 9, 2007) (Fitzwater, J.), *aff'd*, 325 Fed. Appx. 297 (5th Cir. 2009).

If RCA meets its production burden, Penalver must adduce evidence that would permit a reasonable jury to find that the adverse employment action would not have occurred but for the protected conduct. *See Walker*, 2005 WL 2278080, at *9. "After the employer has produced evidence to rebut the employee's *prima facie* case of retaliation, the showing that the plaintiff must make to establish causation is more onerous than that initially required to present a *prima facie* case." *Phillips v. Credit Lyonnais*, 2002 WL 1575412, at *8 n.4 (N.D. Tex. July 16, 2002) (Fish, C.J.) (citing *Sherrod v. Am. Airlines, Inc.*, 132 F.3d 1112, 1122 n.8 (5th Cir. 1998); *Long*, 88 F.3d at 305 n.4). "The ultimate determination in an unlawful retaliation case is whether the conduct protected by Title VII was a 'but for' cause of the adverse employment decision." *Long*, 88 F.3d at 305 n.4.

B

The court considers first whether Penalver has established a prima facie case. RCA concedes that Penalver experienced an adverse employment action. But it maintains that Penalver cannot show that she engaged in a protected activity or that a causal link existed between a protected activity and her termination.

RCA contends that an employee's request for a copy of her employment file is not a protected activity. "An employee engages in a protected activity by (1) opposing an employment practice made unlawful by Title VII, or (2) by making a charge or testifying,

assisting, or participating in an investigation, proceeding, or hearing under Title VII." *Arrieta v. Yellow Transp., Inc.*, 2008 WL 5220569, at *16 (N.D. Tex. Dec. 12, 2008) (Fitzwater, C.J.) (citing *Long*, 88 F.3d at 304), *aff'd sub nom. Hernandez v. Yellow Transp., Inc.*, ___ F.3d ___, 2011 WL 1796366 (5th Cir. May 12, 2011). "The underlying practice need not actually be illegal, but the employee must at least reasonably believe that it is." *Id.* (citing *Long*, 88 F.3d at 304).

Penalver has adduced evidence that she requested her file essentially to show that, when she was hired in 2005, RCA contemplated that she would speak Spanish as a Bilingual Patient Support Representative, and that RCA's decision in 2006 to preclude her from speaking Spanish unless she was assisting a patient who spoke only Spanish (a decision she thought might be reflected in the minutes she had requested) was a discriminatory act based on her national origin. Coupled with this evidence is proof that, based on her meeting with Pennington and Howard, Penalver thought the English-only policy was discriminatory: she believed it only applied to her; she was not told and did not understand the intent behind the policy; and the policy was not discussed with other employees. Penalver has therefore shown that her actions on July 28, 2006 qualified as conduct opposing an employment practice (i.e., the English-only policy) that she reasonably believed was illegal.

As for RCA's contention that Penalver cannot show that a causal link existed between a protected activity and her termination, the initial requirement that Penalver show such a "causal link" is "much less stringent" than the "but for" causation that a jury must find.[4] *Montemayor*, 276 F.3d at 692; *see also Khanna*, 2000 WL 1801850, at *4 (characterizing prima facie burden as "minimal"). RCA argues that there is no evidence that anyone at RCA was aware that Penalver had engaged in a protected activity when Pennington decided to terminate Penalver's employment. Penalver responds that close timing between her protected activity and the adverse action can establish the causal connection for a prima facie case of retaliation. *See Swanson v. Gen. Servs. Admin.*, 110 F.3d 1180, 1188 (5th Cir. 1997).

The court holds that Penalver has made the required showing. According to the summary judgment evidence, Penalver sent an email to Pennington and Howard requesting her file and the minutes from the July 26 meeting on July 28, 2006, at 8:22 a.m. Penalver was terminated before 4:03 p.m. that same day, at which time Pennington

---

[4]RCA maintains that Penalver must show that the adverse employment action would not have occurred "but for" the protected activity. RCA is correct as to Penalver's overall burden, but to establish a prima facie case, Penalver's burden is minimal, and she is required to show less than "but for" causation. After she establishes her prima facie case and RCA produces evidence of a legitimate, nondiscriminatory reason for its actions, Penalver must show "but for" causation, and the Fifth Circuit has explicitly held that temporal proximity alone is insufficient to establish "but for" causation. *See, e.g., Strong v. Univ. Healthcare Sys., L.L.C.*, 482 F.3d 802, 808 (5th Cir. 2007).

wrote to Dominguez regarding Penalver's termination. In her email, Pennington explained to Dominguez that "I basically told [Penalver] that after her e-mail today . . . the decision was made for this to be her last day of employment with RCA." P. App. 14. It can reasonably be inferred from Pennington's email that one reason for terminating Penalver was that she had written the email complaining of the English-only policy. Penalver has therefore satisfied the third element of a prima facie case of retaliation.

C

Because Penalver has established a prima facie case of retaliation, the burden shifts to RCA to articulate a legitimate, nondiscriminatory reason for terminating her employment. This burden is one of production, not of proof. *See Wooten*, 2007 WL 63609, at *16. As discussed *supra* § III(D), RCA has produced evidence of several legitimate, nondiscriminatory reasons for discharging Penalver.

D

Because RCA has met its burden of production, Penalver must adduce evidence that would permit a reasonable jury to find that the adverse employment action would not have occurred but for the protected conduct. *See Walker*, 2005 WL 2278080, at *9. "After the employer has produced evidence to rebut the employee's *prima facie* case of retaliation, the showing that the plaintiff must make to establish causation is more onerous than that initially required to

present a *prima facie* case." *Phillips*, 2002 WL 1575412, at *8 n.4 (citing *Sherrod*, 132 F.3d at 1122 n.8; *Long*, 88 F.3d at 305 n.4). "The ultimate determination in an unlawful retaliation case is whether the conduct protected by Title VII was a 'but for' cause of the adverse employment decision." *Long*, 88 F.3d at 305 n.4. After the plaintiff establishes her prima facie case and the defendant provides a legitimate, nondiscriminatory reason for termination, the plaintiff "must reveal a conflict in substantial evidence on the ultimate issue of retaliation in order to withstand a motion for summary judgment." *Medina v. Ramsey Steel Co., Inc.*, 238 F.3d 674, 685 (5th Cir. 2001) (internal quotation marks and citation omitted).

A reasonable jury could find that RCA terminated Penalver in response to her email regarding the English-only policy. For example,[5] the email from Pennington to Dominguez would enable a reasonable jury to find that the decision to terminate Penalver's employment was based *at least in part* on Penalver's request for her file (which might show what language practices were expected when she was hired in 2005) and the minutes of the meeting two days earlier (which could confirm the implementation of the English-only

---

[5]"When this court denies rather than grants summary judgment, it typically does not set out in detail the evidence that creates a genuine issue of material fact." *Inclusive Cmtys. Project*, 749 F.Supp.2d at 506 n.23 (citing *Swicegood v. Med. Protective Co.*, 2003 WL 22234928, at *17 n.25 (N.D. Tex. Sept. 19, 2003) (Fitzwater, J.)).

policy). Penalver has adduced evidence from which a reasonable jury could find that she would not have been terminated but for her conduct opposing the English-only policy. The court therefore holds that RCA is not entitled to summary judgment as to Penalver's retaliation claim.

* * *

For the reasons explained, RCA's March 1, 2011 motion for summary judgment is granted as to Penalver's Title VII discrimination claim and denied as to her Title VII retaliation claim.

**SO ORDERED.**

May 18, 2011.

_____
SIDNEY A. FITZWATER
CHIEF JUDGE